| | |
|---|---|
| Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc.<br><br>Recurrida<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico; Junta de Planificación del Estado Libre Asociado de Puerto Rico<br><br>Recurrida<br><br>Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio de Puerto Rico<br><br>Parte Interventora – Peticionaria | Certiorari<br><br>2023 TSPR 26<br><br>211 DPR \_\_\_ |

Número del Caso: CC-2021-0418

Fecha: 14 de marzo de 2023

Tribunal de Apelaciones:

    Panel VI

Abogados de la parte peticionaria:

    Lcdo. Carlos J. Ríos Pierluisi
    Lcda. Edmee Zeidan Cuebas

Abogados de las partes recurridas:

    Junta de Planificación

    Lcdo. Eric Rubén Huertas Morales
    Lcda. Jesica Nieves Meléndez
    Lcdo. Héctor Morales Martínez

    Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza


    Lcdo. José A. Andreu Fuentes
    Lcdo. José J. Lamas Rivera
    Lcdo. Frank Torres Viada

Materia: Derecho Administrativo y Procedimiento Civil – La Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico no es parte indispensable en el procedimiento de impugnación de su faz del Reglamento Conjunto de 2020.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc.<br><br>Recurrida<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico; Junta de Planificación del Estado Libre Asociado de Puerto Rico<br><br>Recurrida<br><br>Oficina de Gerencia Permisos del Departamento de Desarrollo Económico y Comercio de Puerto Rico<br><br>Parte Interventora - Peticionaria | CC-2021-0418 |

La Jueza Presidenta Oronoz Rodríguez emitió la Opinión del Tribunal

En San Juan, Puerto Rico, a 14 de marzo de 2023.

Este recurso nos brinda la oportunidad de aclarar si en un procedimiento judicial ante el Tribunal de Apelaciones al amparo de la Sección 2.7 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, infra, sobre impugnación de su faz del *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, infra, se debe incluir como parte indispensable a la Oficina de Gerencia de Permisos (OGPe).

Tras realizar un ejercicio hermenéutico armonioso de las normas legales que gobiernan esta controversia, concluimos que no. En consecuencia, establecemos que, a tono con el

derecho vigente, cuando se impugne de su faz la referida regulación, la única agencia administrativa que debe figurar como parte recurrida en ese procedimiento es la Junta de Planificación de Puerto Rico.

Veamos los hechos que originaron esta controversia.

## I

El Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. (entidades recurridas) presentaron un *Recurso de Revisión Judicial* ante el Tribunal de Apelaciones.[1] Mediante este, pretendían impugnar de su faz el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Reglamento Núm. 9233 de 2 de diciembre de 2020 (Reglamento Conjunto de 2020). Lo anterior, al amparo de la Sección 2.7 de la Ley Núm. 38 de 30 de junio de 2017, mejor conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), 3 LPRA sec. 9617. En síntesis, las entidades recurridas argumentaron que el Reglamento Conjunto de 2020 adolecía de nulidad debido a que durante su proceso de adopción no se notificó adecuadamente a la ciudadanía sobre la intención de aprobar la referida regulación, como tampoco se brindó espacio suficiente para una amplia participación ciudadana. Por su parte, la Junta de Planificación de Puerto Rico (Junta de Planificación) sostuvo

---

[1] Apéndice del *certiorari*, pág. 25. El recurso se le notificó al Departamento de Justicia —como representante del Estado Libre Asociado de Puerto Rico— y a la Junta de Planificación.

que el proceso de reglamentación que se efectuó se adhirió a las exigencias de ley.

Al considerar estos planteamientos, el Tribunal de Apelaciones emitió una *Sentencia* mediante la cual declaró nulo el Reglamento Conjunto de 2020.[2] Coincidió, en parte, con las entidades recurridas. Razonó que, si bien la Junta de Planificación cumplió con los requisitos básicos de notificación de la propuesta de reglamentación y vistas públicas establecidos en la LPAU, supra, el proceso que se llevó a cabo no satisfizo las garantías de participación ciudadana amplia que surgían de otros estatutos.

Más adelante, y en lo pertinente a la controversia ante nos, la OGPe compareció al Tribunal de Apelaciones mediante una *Moción de reconsideración y en solicitud de desestimación por falta de parte indispensable*.[3] Enunció que el foro apelativo intermedio actuó sin jurisdicción al emitir la *Sentencia* de nulidad del Reglamento Conjunto de 2020. Esto, pues apuntaló que era una **parte indispensable** de ese procedimiento, pero que no se le acumuló en este ni se le notificó del recurso de revisión judicial. Por consiguiente, estimó que el dictamen emitido era nulo.

Para sustentar su contención, la OGPe esgrimió, en resumen, que: (a) era la agencia principal responsable de implementar las disposiciones del Reglamento Conjunto de 2020; (b) participó activamente del proceso de reglamentación

---

[2] Apéndice del *certiorari*, págs. 9-24.
[3] Íd., pág. 3.

que culminó en la adopción de la referida regulación; (c) el reglamento en cuestión no es exclusivo de la Junta de Planificación, y (e) la Ley Núm. 161-2009, infra, le adscribió un rol protagónico en la preparación y adopción del reglamento. En virtud de ello, la OGPe elaboró que la *Sentencia* del foro apelativo intermedio afectó sustancialmente la política pública que venía llamada a implementar por mandato de la Ley Núm. 161-2009, infra. Asimismo, que dicha determinación no debía tomarse sin incluírsele en el procedimiento, pues incidió directamente en su capacidad funcional y operacional. A base de esta exposición, la OGPe le solicitó al foro apelativo intermedio que reconsiderara su *Sentencia* y desestimara el recurso de revisión judicial que instaron las entidades recurridas. Ulteriormente, el foro apelativo intermedio denegó el petitorio de la OGPe.[4]

Inconforme, la OGPe recurrió ante este Tribunal mediante el recurso de epígrafe y señaló el error siguiente:

> Erró el Tribunal de Apelaciones al no desestimar el Recurso de Revisión Administrativa, a pesar de que dicho recurso no se perfeccionó conforme a derecho debido a la no acumulación de una parte indispensable, la Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio, privando al foro apelativo intermedio de jurisdicción.

En su discusión de este señalamiento, la OGPe reprodujo los mismos argumentos que vertió ante el Tribunal de Apelaciones. Particularmente, enfatizó que adoptó el

---

[4] Íd., pág. 1.

Reglamento Conjunto de 2020 en unión a la Junta de Planificación y que, por ello, forzosamente tiene que figurar junto con esta como parte recurrida del pleito de impugnación al amparo de la Sección 2.7 de la LPAU, supra.[5] Para sustentar esa aseveración, hizo referencia a la Sección 2.18 de la LPAU, supra, sobre reglamentos conjuntos.

De otro lado, la Junta de Planificación, en su alegato, desarrolló una línea argumentativa idéntica a la de la OGPe. A saber, que la Ley Núm. 161-2009, infra, también le delegó a la OGPe el proceso de preparación y adopción del Reglamento Conjunto de 2020. Adicionó que el estatuto, en cuanto a la adopción del referido reglamento, colocó en un sitial igualitario tanto a la OGPe como a la Junta de Planificación. De igual modo, aludió a que la regulación en cuestión es una *conjunta* bajo la Sección 2.18 de la LPAU —y no un reglamento exclusivamente suyo—, por lo que la OGPe también está involucrada en su adopción. En consecuencia, la Junta de Planificación explicó que debía acumularse a la OGPe en el procedimiento ante el Tribunal de Apelaciones.

Por su parte, las entidades recurridas expusieron, en suma, que de la Ley Núm. 161-2009, infra, se desprendía claramente que fue la Junta de Planificación la agencia que

---

[5] Por otro lado, la OGPe manifestó que, como integrante de la estructura organizacional del Departamento de Desarrollo Económico y Comercio de Puerto Rico, le corresponde velar también por la ejecución de la política pública sobre desarrollo económico del País. A tal efecto, aseveró que dicho desarrollo económico se ve afectado por la decisión del foro apelativo intermedio de anular el Reglamento Conjunto de 2020, habida cuenta de la importancia de esta regulación para ese renglón. Recurso de *certiorari*, págs. 13-19.

adoptó el Reglamento Conjunto de 2020 y no la OGPe, pues esta última solo tuvo un rol de colaboración.[6]

Contando con las comparecencias de las partes, resolvemos.

## II

### A. La jurisdicción

En múltiples ocasiones, hemos manifestado que la jurisdicción es el poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias que tiene ante sí. Cobra Acquisitions, LLC v. Mun. de Yabucoa, 2022 TSPR 104, 210 DPR ___ (2022); Pueblo v. Rivera Ortiz, 2022 TSPR 62, 209 DPR ___ (2022); Administración de Terrenos de Puerto Rico v. Ponce Bayland Enterprises, Inc., 207 DPR 586, 600 (2021). "Para adjudicar un caso, el tribunal debe tener tanto jurisdicción sobre la materia como sobre las partes litigiosas". Cobra Acquisitions, LLC v. Mun. de Yabucoa, supra (citas omitidas). Por tanto, "el primer factor a considerar en toda situación jurídica que se presente ante un foro adjudicativo es el aspecto jurisdiccional". Torres Alvarado v. Maderas Atiles, 202 DPR 495, 500 (2019).

En ese sentido, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, por lo que los asuntos concernientes a la jurisdicción son privilegiados y deben ser atendidos de forma preferente. Ruiz Camilo v. Trafon Group, Inc., 200 DPR 254, 268 (2018). Si un tribunal carece

---

[6] *Alegato en oposición de la parte recurrida*, pág. 2.

de jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia. Mun. de San Sebastián v. QMC Telecom, 190 DPR 652, 660 (2014). Asimismo, cuando un tribunal emite un dictamen sin jurisdicción, ello acarrea su nulidad. González v. Mayagüez Resort & Casino, 176 DPR 848, 855 (2009). Entre las instancias en las que un foro judicial actúa sin jurisdicción se encuentra aquella cuando adjudica sin contar con todas las partes indispensables para la controversia. García Colón et al. v. Sucn. González, 178 DPR 527, 550 (2010).

**B. Acumulación de parte indispensable**

La Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, regula el mecanismo procesal de la acumulación de parte indispensable. En lo pertinente, dispone que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". Íd. Una parte indispensable se ha definido como:

> [A]quella que tiene tal interés en la cuestión envuelta en la controversia que no puede dictarse un decreto final entre las partes en la acción sin lesionar y afectar radicalmente su interés, o sin permitir que la controversia quede en tal estado que su determinación final haya de ser inconsistente con la equidad y una conciencia limpia. Cirino González v. Adm. Corrección et al., 190 DPR 14, 46 (2014).

El interés de la parte en el litigio debe ser de "tal orden que impida la confección de un derecho adecuado sin afectarle o destruirle radicalmente sus derechos". Pérez Rosa

v. Morales Rosado, 172 DPR 216, 223 (2007). Además, el interés debe ser real e inmediato, y no cimentado en especulaciones ni en eventos futuros. Pérez Rosa v. Morales Rosado, supra, pág. 223. "La indispensabilidad de una parte deviene del mandato constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley". R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 6ta ed., San Juan, LexisNexis de Puerto Rico, 2017, sec. 1202, página 165. Véase: RPR & BJJ, Ex parte, 207 DPR 389, 407 (2021).

La Regla 16.1 de las Reglas de Procedimiento Civil, supra, pretende: (1) proteger las personas ausentes de los posibles efectos perjudiciales que pueda ocasionarles la resolución del caso; (2) emitir una determinación completa; y (3) evitar la multiplicidad de pleitos. Véase: RPR & BJJ, Ex parte, supra, pág. 407; Cirino González v. Adm. Corrección et al., supra, pág. 46. Al determinar si una persona es una parte indispensable en un pleito, se requiere un enfoque pragmático e individualizado, a tenor con las particularidades de cada caso. García Colón et al. v. Sucn. González, supra, pág. 549. A tal efecto, el tribunal deberá examinar los intereses envueltos y distinguir entre los diversos géneros de casos. Deliz et als. v. Igartúa et als., 158 DPR 403, 434 (2003). Ello "exige una evaluación jurídica de factores tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad". Íd. (citando a Sánchez v. Sánchez, 154 DPR

645, 678 (2001)). A su vez, se deberá auscultar si el tribunal "podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente". Pérez Rosa v. Morales Rosado, supra, pág. 223.

Lo verdaderamente trascendental es que la ausencia de una parte indispensable priva de jurisdicción al tribunal. García Colón et al. v. Sucn. González, supra, pág. 550.[7] Como corolario, "la sentencia que se emita en ausencia de parte indispensable es nula". Íd. (Énfasis suplido). Véase, además: Unysis P.R., Inc. v. Ramallo Brother Printing, Inc., 128 DPR 842, 859 (1991).

En virtud de estos lineamientos, y muy relevante a la controversia puntual ante nuestra consideración, es menester pasar juicio sobre la normativa que rige el procedimiento judicial de impugnación de su faz de un reglamento administrativo. Allí, veremos qué preceptúa sobre las *partes* que deben integrarlo para que el Tribunal de Apelaciones pueda emitir un dictamen completo.

**C. Impugnación de su faz de un reglamento administrativo**

La LPAU requiere que las agencias administrativas cumplan con ciertos requisitos al ejercer su facultad de reglamentación. Véase: Mun. de Toa Baja v. DRNA, 185 DPR 684, 694 (2012). Al definir el concepto *reglamentación*, la LPAU dispone que se trata "[d]el procedimiento seguido por una

---

[7] Es importante adicionar que la falta de parte indispensable es un planteamiento en extremo relevante que puede traerse en cualquier parte del proceso. Incluso, los foros apelativos pueden levantarlo *motu proprio* por afectar su jurisdicción. Pérez Rosa v. Morales Rosado, 172 DPR 216, 223-224 (2007).

agencia para la formulación, adopción, enmienda o derogación de una regla o reglamento". 3 LPRA sec. 9603 (n). En ese sentido, para que la reglamentación sea válida deben cumplirse cuatro requisitos básicos: (1) notificar al público la reglamentación que ha de aprobarse; (2) proveer oportunidad para la participación ciudadana, incluyendo vistas públicas cuando sea necesario u obligatorio; (3) presentar la reglamentación ante el Departamento de Estado para la aprobación correspondiente, y (4) publicar la reglamentación aprobada. Íd., secs. 9611-9618; Mun. de Toa Baja v. DRNA, supra, pág. 694. "Todos [e]stos constituyen requisitos imprescindibles y de ineludible cumplimiento". Mun. de Toa Baja v. DRNA, supra, pág. 695. Véase también: Centro Unido Detallistas v. Com. Serv. Púb., 174 DPR 174, 183 (2004).

Para que el organismo administrativo se vea compelido a cumplir a cabalidad con los requisitos descritos para el ejercicio regulador, la Sección 2.7 de la LPAU, supra, decreta la nulidad de todo reglamento que se adopte al margen de sus disposiciones.[8] Fuentes Bonilla v. ELA, 200 DPR 364, 377 (2018). A tal efecto, la Sección 2.7 de la LPAU, en lo pertinente, expresa:

---

[8] Esta sección permite la "impugnación de su faz" de un reglamento administrativo por incumplir con las exigencias de la LPAU en torno al procedimiento de reglamentación. Sierra Club v. Junta de Planificación, 203 DPR 596, 606 (2019). A diferencia de impugnar un reglamento por razón de su aplicación, al impugnarlo de su faz no se requiere acreditar legitimación activa. Íd., pág. 607. Cualquier persona puede impugnar de su faz la validez de una regla o reglamento aprobado por una agencia administrativa en incumplimiento de las disposiciones de la LPAU. Íd., págs. 607-608.

(a) Una regla o reglamento aprobado después de la fecha de efectividad de esta Ley será nulo si no cumpliera sustancialmente con las disposiciones de esta Ley.

(b) Cualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento de las disposiciones de esta Ley deberá iniciarse en el Tribunal de Apelaciones dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. La competencia sobre la acción corresponderá a la región judicial donde esté ubicado el domicilio del recurrente. 3 LPRA sec. 9617.

[ . . . . . . . . . . . . . . . .]

Al respecto, este Tribunal ha puntualizado que la intención de la Asamblea Legislativa al establecer esta "acción de nulidad" o "acción de impugnación" fue crear un procedimiento uniforme de revisión judicial de las acciones tomadas por las agencias al promulgar sus reglamentos. Centro Unido Detallistas v. Com. Serv. Púb., supra, pág. 183.

En cuanto a quiénes se consideran "partes" en el pleito de impugnación de su faz de una regla o reglamento que se insta ante el Tribunal de Apelaciones, esta Curia se ha expresado a los efectos de que:

La regla o reglamento pautado por la agencia puede ser impugnado al entrar en vigor, comenzando así el proceso de revisión judicial de su aprobación. **Una vez se presenta el recurso de revisión ante el Tribunal de Apelaciones con tal propósito, el que impugna la actuación administrativa es el recurrente, y la agencia pertinente es la recurrida; sólo entonces es que existe un proceso adversativo ante un tribunal, y, por lo tanto, "partes" ante ese foro.** J.P. v. Frente Unido I, 165 DPR 445, 466 (2005) (Énfasis suplido).

Dicho pronunciamiento estuvo enmarcado en la impugnación de un reglamento en cuya formulación solo intervino una agencia administrativa, sin la intervención de otras. No nos

hemos expresado sobre quiénes deberían ser acumulados como *partes* en el procedimiento que se inicie para retar de su faz un reglamento conjunto. En particular, no se ha precisado cuál debe ser el organismo administrativo que debe figurar como parte recurrida. Independientemente de ello, aclárese lo siguiente. Al aludir a que la *agencia pertinente* es la parte recurrida en el procedimiento judicial de nulidad al amparo de la Sección 2.7 de la LPAU, supra, de conformidad con una lectura integrada de ese estatuto y su jurisprudencia interpretativa, **apuntalamos que ello se refiere a que se debe notificar y acumular al organismo administrativo que —con la delegación que le hizo la Asamblea Legislativa— tenía la facultad para adoptar el reglamento objeto de impugnación.**

En esta coyuntura, corresponde repasar la doctrina jurídica atinente a la delegación de poderes por parte de la Asamblea Legislativa a las agencias del Poder Ejecutivo para estas adoptar reglamentos. Asimismo, es meritorio examinar la legislación que sirvió de base para la adopción del Reglamento Conjunto de 2020 e identificar, de esta forma, a qué agencia administrativa la Asamblea Legislativa le delegó el poder de adoptar la referida regulación. Solo así, mediante este esquema, lograremos obtener la contestación a la interrogante de qué agencia administrativa debe figurar como parte recurrida cuando se impugne de su faz el Reglamento Conjunto de 2020 —al amparo de la Sección 2.7 de la LPAU— ante el Tribunal de Apelaciones.

**D. Delegación de poderes a las agencias administrativas**

La Sección 16 del Artículo III de la Constitución de Puerto Rico concede a la Asamblea Legislativa la facultad de crear, consolidar o reorganizar departamentos ejecutivos y definir sus funciones. Art. III, Sec. 16, Const. ELA, LPRA, Tomo I. Así, históricamente, la Asamblea Legislativa ha delegado a las agencias administrativas adscritas al Poder Ejecutivo una serie de facultades, ya sea a través de la ley orgánica de la agencia o a través de leyes especiales. J.P. v. Frente Unido I, supra, pág. 469. Véase también: Sánchez v. Depto. Vivienda, 184 DPR 95, 120-123 (2011). "Dentro de ese marco de delegación, las agencias administrativas gozan de dos poderes esenciales: el poder de reglamentar al ejercer funciones cuasi-legislativas y el poder de adjudicar controversias al ejercer funciones cuasi-judiciales dentro de la pericia de la agencia". Caribe Comms., Inc. v. PRTC, 157 DPR 203, 211 (2002). Véase también: Sierra Club v. Junta De Planificación, 203 DPR 596, 605 (2019); D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Sec. 2.1, 3ra ed., Forum, 2013, págs. 35-36.[9]

En este contexto, la Asamblea Legislativa tiene un rol neurálgico, pues tiene la labor ingente de delinear los

---

[9] Específicamente, en cuanto al poder de reglamentar, según discute el tratadista Demetrio Fernández Quiñones, ello se refiere a que la Asamblea Legislativa les encomienda a las agencias administrativas la aprobación de reglas y reglamentos. D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Sec. 3.1, 3ra ed., Forum 2013, pág. 121. De este modo, la acción que estas llevan cabo es de carácter legislativo. "El procedimiento es un medio para formular política pública. La finalidad primordial de la aprobación de reglas y reglamentos es establecer normas generales que resuelvan una multiplicidad de casos". Íd.

contornos del ámbito de acción de las agencias administrativas, tanto en la delegación de poder de reglamentar como de adjudicar. D. Fernández Quiñones, *op. cit.*, págs. 35-36. A tal efecto, les corresponde a los organismos administrativos adherirse estrictamente a los poderes que les han sido delegados. Íd. Por tanto, cuando se delega una función específica a una agencia, esta no puede excederse de los límites establecidos expresa o implícitamente en la ley o por clara implicación de ésta. Igualmente, los tribunales no podemos expandir el ámbito de acción que estableció el legislador. Yiyi Motors, Inc. v. ELA, 177 DPR 230, 247 (2009). Las actuaciones administrativas deben ajustarse al poder delegado y en ausencia de un mandato legislativo expreso o implícito, aquella actuación administrativa que no obedezca el poder conferido sería una actuación *ultra vires* de la agencia y, por ende, nula. Raimundi v. Productora, 162 DPR 215, 228 (2004).

A través de este crisol procederemos a examinar la legislación concerniente a la adopción del Reglamento Conjunto de 2020.

**E. La *Ley Orgánica de la Junta de Planificación de Puerto Rico*, la *Ley para la Reforma del Proceso de Permisos de Puerto Rico* y el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios***

**i. Ley Orgánica de la Junta de Planificación de Puerto Rico**

La *Ley Orgánica de la Junta de Planificación de Puerto Rico*, Ley Núm. 75 de 24 de junio de 1975, 23 LPRA sec. 62 et

seq., dio base a la creación de la Junta de Planificación de Puerto Rico. A pesar de que este estatuto le confiere a la Junta de Planificación la facultad de adoptar un sinnúmero de reglamentos, en este no se halla la delegación para adoptar un *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*. Por ello, debemos recurrir a la Ley Núm. 161-2009, infra.

### ii. Ley para la Reforma del Proceso de Permisos de Puerto Rico

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, Ley Núm. 161 de 1 de diciembre de 2009 (Ley Núm. 161-2009), 23 LPRA sec. 9011 et seq., se promulgó con el propósito de atender un problema existente con el proceso de otorgación de permisos para el desarrollo de obras de construcción en Puerto Rico. Exposición de Motivos, Ley Núm. 161. Específicamente, este proceso:

> [S]e enc[ontraba] en un estado crítico que atenta[ba] negativamente contra diversos frentes socioeconómicos, culturales y empresariales. La realidad ineludible nos indica[ba] que el proceso en la evaluación para el otorgamiento de permisos e[ra] una de las áreas más problemáticas y deficientes que realiza[ba] el Gobierno. Por consiguiente, el mismo afecta[ba] gravemente nuestro desarrollo en general. Por ello, resulta[ba] indispensable que atend[iéramos] con prioridad esta situación negativa y diseñ[áramos] nuevas alternativas para atender la misma. Íd.

De este modo, la Asamblea Legislativa entendió necesario reformar y transformar el proceso de otorgación de permisos. Íd. Entre las medidas puntuales que se tomaron para atender esta situación, "se cre[ó] un nuevo organismo gubernamental

para dirigir el esfuerzo de emitir determinaciones finales y permisos, licencias, inspecciones, certificaciones y cualquier otra autorización o trámite que [fuera] necesario". Íd. Este organismo se conocería como la Oficina de Gerencia de Permisos. Ahora bien, la referida legislación no solamente creó esta agencia administrativa, sino que también —y entre otras cosas— **proveyó expresamente para la adopción del *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*.**

### iii. Reglamento Conjunto

El Capítulo XV de la Ley Núm. 161-2009 rige todo lo relacionado con la adopción del Reglamento Conjunto. En específico, el Artículo 15.1 del estatuto establece:

> En cumplimiento con las disposiciones de este capítulo, la Junta de Planificación, **con la colaboración de** la Oficina de Gerencia de Permisos y las entidades gubernamentales concernidas, según aplique, prepararán y adoptarán, con sujeción a las disposiciones de este capítulo, las secs. 4001 et seq. del Título 21, conocidas como la "Ley de Municipios Autónomos", las disposiciones contenidas en las secs. 62 et seq. de este título, conocidas como la "Ley Orgánica de la Junta de Planificación", y las secs. 9601 et seq. del Título 3, conocidas como "Ley de Procedimiento Administrativo Uniforme", un Reglamento Conjunto para establecer y aplicar: (a) un sistema uniforme de adjudicación; (b) la evaluación y expedición de determinaciones finales, permisos y recomendaciones relacionados a obras de construcción y uso de terrenos; (c) las guías de diseño verde para la capacitación de los profesionales autorizados y a cualquier otra persona que le interese certificarse bajo las guías de diseño verde de Puerto Rico; (d) procedimiento de auditorías y querellas ante la Junta de Planificación, las entidades gubernamentales concernidas y los Municipios Autónomos con Jerarquía de la I a la V, según aplique; y

(e) cualquier otro asunto que este capítulo haya referido atenderse mediante reglamentación y aquellas específicamente concernientes a la Oficina de Gerencia de Permisos. **El Reglamento Conjunto antes mencionado se conocerá como el "Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios" y deberá ser adoptado por la Junta de Planificación y aprobado por el Gobernador.** La preparación del Reglamento Conjunto estará exenta de cumplir con las secs. 8001 et seq. del Título 12.

La Junta de Planificación, la Oficina de Gerencia de Permisos y las entidades gubernamentales concernidas tendrán treinta (30) días, contados a partir de la fecha de la vigencia de esta ley, para iniciar el proceso de preparación del Reglamento Conjunto, el cual concluirá dentro de los ciento ochenta (180) días siguientes a la fecha de la vigencia de esta ley. **La Junta de Planificación establecerá, mediante resolución, el mecanismo que regirá el proceso de la preparación del Reglamento Conjunto.** Para la aprobación del Reglamento Conjunto se garantizará una amplia participación a la ciudadanía mediante vistas públicas. El Reglamento Conjunto será suplementario a este capítulo y prevalecerá sobre cualquier otro reglamento.

La enmienda de un artículo o parte del Reglamento Conjunto no requerirá la enmienda de la totalidad del mismo. En el caso de enmiendas parciales al Reglamento Conjunto, las mismas sólo requerirán la adopción por parte de la Oficina de Gerencia de Permisos o las entidades gubernamentales concernidas afectadas por las mismas y **la aprobación de la Junta de Planificación.**

Si la Junta de Planificación no está de acuerdo con alguna disposición que se determina incluir en el Reglamento Conjunto, sea al momento de su adopción, conforme al primer párrafo de esta sección, o en el proceso de enmiendas, conforme al segundo párrafo de esta sección, [e]sta emitirá una resolución en la que detallará su objeción y la devolverá, según aplique a la Oficina de Gerencia de Permisos o a las entidades gubernamentales concernidas, afectadas por las mismas para que éstas enmienden el texto propuesto. Si las entidades gubernamentales concernidas, la Oficina de Gerencia de Permisos y la Junta de Planificación no pueden llegar a un acuerdo en torno al texto propuesto, se le someterá el texto sugerido junto a la resolución de la Junta de Planificación con sus objeciones al

Gobernador, quien tomará la decisión final en torno a la disposición reglamentaria en disputa. La Junta de Planificación, la Oficina de Gerencia de Permisos y las entidades gubernamentales concernidas tendrán ciento ochenta (180) días para adoptar el Reglamento Conjunto a partir de la fecha de la vigencia de esta ley. 23 LPRA sec. 9025. (Énfasis suplido).[10]

**F. Sección 2.18 de la LPAU**

La LPAU, <u>supra</u>, hace una sola mención sobre los Reglamentos Conjuntos, la cual está recogida en su Sección 2.18, que reza de la forma siguiente:

> Dos o más agencias podrán aprobar reglamentos en conjunto, al amparo de las leyes que respectivamente administran, en aquellos casos en que el servicio a la ciudadanía lo amerite.

> Los jefes de agencia concernidos designarán en conjunto al funcionario examinador, o panel examinador, que estará a cargo del procedimiento de reglamentación, el que rendirá un solo informe

---

[10] El Artículo 1.5 de la Ley Núm. 161-2009 define a las *Entidades gubernamentales concernidas* de la forma siguiente:

*Entidades gubernamentales concernidas.* — Se refiere colectivamente a la Junta de Planificación; la Junta de Calidad Ambiental; la Comisión de Servicio Público; la Autoridad de Energía Eléctrica; la Autoridad de Carreteras y Transportación; el Departamento de Recursos Naturales y Ambientales; la Autoridad de Acueductos y Alcantarillados; la Administración de Servicios Generales; la Junta Reglamentadora de Telecomunicaciones; el Departamento de Transportación y Obras Públicas; la Compañía de Comercio y Exportación; la Compañía de Fomento Industrial; la Compañía de Turismo; el Instituto de Cultura Puertorriqueña; el Departamento de Agricultura; el Departamento de Salud; el Departamento de Hacienda; el Departamento de Asuntos del Consumidor; el Departamento de la Familia; el Cuerpo de Bomberos; la Policía de Puerto Rico; el Departamento de la Vivienda; el Departamento de Recreación y Deportes; la Autoridad de Desperdicios Sólidos; el Departamento de Educación; la Autoridad de los Puertos; la Administración del Deporte de la Industria Hípica; Oficina Estatal de Conservación Histórica; y la Oficina Estatal de Política Pública Energética, y cualquier otra agencia o instrumentalidad que el Gobernador determine mediante Orden Ejecutiva y que tenga injerencia sobre el proceso de evaluación de solicitudes para el desarrollo y uso de terrenos, consultas, permisos, licencias, certificaciones, autorizaciones o cualquier trámite para la operación de negocios en Puerto Rico o que incida de forma directa o indirecta en dicha operación. 23 LPRA sec. 9011.

dirigido a todos los jefes de agencia concernidos.
3 LPRA sec. 9628.

Esta Curia no ha tenido la oportunidad de interpretar esa disposición. No obstante, ciertos comentaristas jurídicos han abordado su propósito. Se ha expuesto que "[e]sta norma sirve de recordatorio de que las agencias administrativas no son entidades aisladas. [Estas] deben trabajar en conjunto para alcanzar los mismos objetivos que [la Asamblea Legislativa] delegó a varias entidades". M. Izquierdo Encarnación, Introducción al Derecho Administrativo, 3ra ed., San Juan, Ed. Situm, 2017, pág. 132.  También se ha acotado que el reglamento conjunto al que alude la Sección 2.18 de la LPAU:

> [D]eberá responder a los poderes y facultades delegados a cada una de las respectivas agencias. Ello implica que cada uno de los entes administrativos podrá ejercer sus capacidades individuales y acumularlos con los poderes y facultades de otras agencias administrativas en un solo y exclusivo reglamento que podrá ser de naturaleza abarcador[a], pero que no podrá ser más que la suma de sus componentes individuales. J. Echevarría Vargas, Derecho administrativo puertorriqueño, 4ta ed. rev., San Juan, Ed. Situm, 2017, págs. 127-128.

## G. Hermenéutica jurídica

Por ser necesario para la disposición del recurso de epígrafe, conviene señalar que en nuestro ordenamiento jurídico se han instaurado una serie de normas de hermenéutica legal, las cuales —en mayor o menor grado— se imponen como principios rectores del ejercicio de nuestra función adjudicativa. Rosado Molina v. ELA, 195 DPR 581, 589 (2016); San Gerónimo Caribe Project v. Registradora, 189 DPR 849, 868

(2013); Const. José Carro v. Mun. Dorado, 186 DPR 113, 126 (2012). Como es conocido, es un principio cardinal de hermenéutica que cuando la ley es clara y libre de toda ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir con su espíritu. Véanse: San Gerónimo Caribe Project v. Registradora, supra, pág. 866; Const. José Carro v. Mun. Dorado, supra, pág. 126; IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 739 (2012); Sánchez Díaz et al. v. ELA, 181 DPR 810, 821 (2011).

"Amparándonos en este axioma de interpretación judicial, hemos establecido que 'el primer paso al interpretar un estatuto es remitirnos al propio texto de la ley, puesto que cuando [la Asamblea Legislativa] se ha expresado en un lenguaje claro e inequívoco, el propio texto de la ley es la expresión por excelencia de la intención legislativa'". Rosado Molina v. ELA, supra, pág. 589 (citando a Cordero v. ARPe, 187 DPR 445, 456 (2012)) (Énfasis suplido).

A la luz de este cuadro jurídico, procedemos a resolver la controversia ante nuestra consideración.

### III

Previo a disponer de este recurso, es menester dejar claro una cuestión de umbral. La controversia que nos corresponde dilucidar consiste únicamente en si el Tribunal de Apelaciones actuó con **jurisdicción** al emitir su dictamen anulando el Reglamento Conjunto de 2020 en vista de que no se acumuló en el procedimiento ante sí a la OGPe. De ninguna

manera pasamos juicio sobre la corrección o no del proceso que se llevó a cabo para adoptar el Reglamento Conjunto de 2020.[11] Aclarado este extremo, resolvemos.

En resumen, la OGPe esgrime que la *Sentencia* de nulidad del Reglamento Conjunto de 2020 que emitió el Tribunal de Apelaciones es, a su vez, nula, habida cuenta de la indispensabilidad de su presencia en ese pleito. Basa su tesis, **en primer lugar** —y según relatáramos—, en que le corresponde poner en vigor la mayoría de las disposiciones del Reglamento Conjunto de 2020, que participó activamente en su formulación y que la Ley Núm. 161-2009 le atribuyó un rol protagónico en ese proceso. **En segundo lugar**, aludió someramente a la Sección 2.18 de la LPAU, supra. El razonamiento descrito también fue adoptado por la Junta de Planificación. **Un examen sereno de la normativa aplicable pone de manifiesto que ni a la OGPe ni a la Junta de Planificación les asiste la razón.** Veamos.

Con relación a lo **primero**, precisa exponer que los argumentos de la OGPe están desenfocados y no van a la médula del criterio que se debe emplear para determinar qué agencia administrativa debe ser la parte recurrida en un procedimiento al amparo de la Sección 2.7 de la LPAU, supra. Lo que debemos identificar —como bien adelantamos— es a qué organismo administrativo la Asamblea Legislativa le delegó diáfanamente —por medio de un estatuto— la facultad de

---

[11] En ese sentido, es preciso apuntalar que la parte peticionaria del recurso instado ante nos, la Oficina de Gerencia de Permisos, no impugnó los méritos de la determinacion del Tribunal de Apelaciones.

promulgar un reglamento, en este caso, el Reglamento Conjunto de 2020. Esto, pues estimamos que es tal organismo el que debe figurar como parte recurrida en el referido procedimiento. Es inconsecuente —para fines de resolver esta controversia— si en la práctica la OGPe participó activamente en el proceso de adopción del reglamento, si la legislación le otorgó un rol protagónico en este o si le corresponde poner en vigor la mayoría de las disposiciones de la regulación en cuestión.

Al recurrir al lenguaje del Artículo 15.1 de la Ley Núm. 161-2009, **queda claro que la Asamblea Legislativa le delegó específicamente a la Junta de Planificación de Puerto Rico la facultad de adoptar el Reglamento Conjunto de 2020, con la subsiguiente aprobación del Gobernador de Puerto Rico. No podemos interpretar el texto de ese artículo de otra manera, pues más patente no puede ser la delegación allí dispuesta.** Ciertamente, de ese precepto también se desprende que la Junta de Planificación recibirá el insumo y la colaboración de la OGPe y otras entidades gubernamentales en el proceso de adoptar el Reglamento Conjunto de 2020, **pero nada más.**

A base de una lectura integral del articulado de la Ley Núm. 161-2009, supra, colegimos que el reglamento objeto de esta controversia es **"conjunto"** dado que el ejercicio de determinar su contenido se hace en colaboración con la OGPe y las demás entidades gubernamentales, **mas el poder último de adoptarlo recae indudablemente en la Junta de Planificación de Puerto Rico.** Con esta interpretación, le damos vitalidad

a la intención de la Asamblea Legislativa manifestada sin ambages en el texto del Artículo 15.1 de la Ley Núm.161-2009, supra. Sirve de apoyo a nuestra conclusión que el estatuto: (a) faculta a la Junta de Planificación a establecer el mecanismo que regirá el proceso de la preparación del Reglamento Conjunto; (b) dispone que las enmiendas parciales al reglamento propuestas por la OGPe o las otras entidades gubernamentales serán finalmente aprobadas por la Junta de Planificación, y (c) le confiere la autoridad a la Junta de Planificación de oponerse a disposiciones que se propongan incluirse en el reglamento si no está de acuerdo. 23 LPRA sec. 9025. Todos estos elementos indican que, además de gozar de la facultad de adoptar el Reglamento Conjunto, la Junta de Planificación también ejerce amplio control sobre el proceso de su preparación.

Cónsono con lo esbozado, resolvemos que, **siendo la Junta de Planificación el único organismo administrativo con la delegación de poder expresa para adoptar el Reglamento Conjunto de 2020, esta es quien único el ordenamiento exige que comparezca —y se le acumule— como parte recurrida en un procedimiento de impugnación de su faz del referido reglamento, al amparo de la Sección 2.7 de la LPAU, supra. La OGPe simple y llanamente no es parte indispensable en ese pleito, pues no tiene un interés común en este, sin cuya presencia no pueda ventilarse.**

En esta tesitura, conviene despejar cualquier duda que pueda haber, particularmente sobre la última oración del

Artículo 15.1 de la Ley Núm. 161-2009, supra, la cual reza: **"La Junta de Planificación, la Oficina de Gerencia de Permisos y las entidades gubernamentales concernidas tendrán ciento ochenta (180) días para adoptar el Reglamento Conjunto a partir de la fecha de la vigencia de esta ley"**. 23 LPRA sec. 9025. (Énfasis suplido). Nuestra lectura comprensiva del estatuto en cuestión y de la totalidad de la referida disposición nos lleva a interpretar que ello se refiere a que, en el término aludido, la OGPe y las entidades gubernamentales concernidas colaborarán y brindarán su insumo a la Junta de Planificación para fines de la adopción del Reglamento Conjunto. De igual forma, **que dentro de ese plazo la Junta de Planificación adoptará finalmente la regulación en cuestión.** Aun asumiendo que esa expresión le otorga facultad a la OGPe y a las entidades gubernamentales concernidas para incidir de manera preponderante en la adopción del Reglamento Conjunto de 2020 —lo cual, a nuestro juicio, sería una interpretación aislada y descontextualizada y, por ende, incorrecta—, **como cuestión de realidad la Junta de Planificación fue la entidad que finalmente lo adoptó.**[12]

Por consiguiente, el Tribunal de Apelaciones emitió un

---

[12] Evidencia de esto es que del documento que constituye el Reglamento Conjunto de 2020 se desprende que la Junta de Planificación lo adoptó propiamente y lo sometió para su aprobación ante el Departamento de Estado. Véase: Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9233, Departamento de Estado, 2 de diciembre de 2020, http://app.estado.gobierno.pr/ReglamentosOnLine/Reglamentos/9233.pdf.

dictamen con plena jurisdicción, por lo que actuó conforme a derecho.

Ahora bien, aunque lo expuesto es suficiente para disponer de esta controversia, corresponde atender lo que **en segundo lugar** nos esbozó la OGPe —y repitió la Junta de Planificación— sobre la aplicabilidad de la Sección 2.18 de la LPAU, supra, a este caso. La OGPe enfatiza que, a base de esa disposición, como tiene un *mandato* de trabajar de la mano con la Junta de Planificación, es necesaria su presencia en el pleito ante el foro apelativo intermedio. **La realidad es que este planteamiento es una reiteración de lo que ya discutimos y dispusimos, por lo que carece de méritos. La referida Sección 2.18, en forma alguna, incide sobre la resolución de este caso.** Adviértase que ese precepto proviene de la LPAU —un estatuto de carácter procesal y no sustantivo—, y no delega facultad alguna a ningún organismo administrativo para reglamentar en una materia específica. Meramente se limita a enunciar la posibilidad que tienen las agencias de adoptar reglamentos de manera conjunta. Ciertamente, ello está supeditado a la naturaleza de la delegación que la Asamblea Legislativa haga para adoptar algún reglamento conjunto.

Según disertamos —independientemente del nivel de participación de la OGPe—, en este caso, la Ley Núm. 161-2009 le delegó específicamente a la Junta de Planificación la adopción del Reglamento Conjunto de 2020, no a múltiples agencias. Las otras agencias mencionadas en la legislación

—incluida la OGPe— solo tienen un rol colaborador, lo cual no constituye un criterio para determinar que deben ser partes recurridas del procedimiento de impugnación de su faz del Reglamento Conjunto de 2020.

## IV

Por los fundamentos expuestos, se confirma la Sentencia del Tribunal de Apelaciones —que declaró nulo el Reglamento Conjunto de 2020—, toda vez que se emitió con jurisdicción y contando con la comparecencia de todas las partes requeridas en el caso.

Se dictará Sentencia de conformidad.


                                    Maite D. Oronoz Rodríguez
                                        Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc.<br><br>　　　Recurrida<br><br>　　　　　v.<br><br>Estado Libre Asociado de Puerto Rico; Junta de Planificación del Estado Libre Asociado de Puerto Rico<br><br>　　　Recurrida<br><br>Oficina de Gerencia Permisos del Departamento de Desarrollo Económico y Comercio de Puerto Rico<br><br>　Parte Interventora - Peticionaria | CC-2021-0418 | |

SENTENCIA

En San Juan, Puerto Rico, a 14 de marzo de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se confirma la Sentencia del Tribunal de Apelaciones —que declaró nulo el Reglamento Conjunto de 2020—, toda vez que se emitió con jurisdicción y contando con la comparecencia de todas las partes requeridas en el caso.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García concurre y emite las expresiones siguientes:

"Coincido plenamente con el resultado al cual arriba una mayoría de este Tribunal. En efecto, la única interrogante que nos ocupaba era aquella que requería establecer si la Oficina de Gerencia de Permisos (OGPe) era o no una parte indispensable en una impugnación de su faz de un reglamento conjunto, emitido al amparo de la Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009, 23 LPRA sec. 9011 *et seq.* Correctamente, se contesta esa pregunta en la negativa.

Ahora bien, me es imprescindible consignar de manera particular mi criterio sobre el **efecto** que procede del **dictamen** hoy enunciado. Y es que, independientemente del fundamento jurídico que hubiese motivado la petición de *Certiorari* aquí examinada, **nuestra determinación —por imperativo de nuestro ordenamiento procesal y apelativo— confirma la validez del dictamen emitido por el Tribunal de Apelaciones**. De este modo, la determinación en este caso confirma, como mínimo **indirectamente**, la nulidad que el foro intermedio decretó respecto al Reglamento Conjunto 2020. Para que surta este efecto, **nada en nuestro ordenamiento exige que así se haya <u>dispuesto expresamente en una ponencia mayoritaria</u>**, es decir, suscrita por al menos cinco (5) miembros de este Tribunal.

A mi juicio, resolver este caso implicaba uno de los siguientes dos (2) escenarios: Primero, el que hoy se resuelve, a saber, que la OGPe no es una parte indispensable en esta impugnación. El segundo, en sentido opuesto, que la OGPe era una parte indispensable. Cualquiera que fuese la determinación, la consecuencia inescapable era que confirmaríamos o revocaríamos la *Sentencia* que emitió el foro intermedio, cuyo resultado fue decretar la nulidad del Reglamento Conjunto 2020. Curiosamente, en un contrasentido, la mayoría indica enfáticamente que este Tribunal no se expresaría en torno a los méritos del proceso que siguió la Junta de Planificación al aprobar el Reglamento Conjunto 2020, sin embargo, termina concluyendo que "se **confirma la Sentencia del Tribunal de Apelaciones — que <u>declaró nulo</u>** el Reglamento Conjunto de 2020—". Véase, Opinión del Tribunal, pág. 26.

Sabido es, que la revisión de los tribunales apelativos siempre se dirige **contra el <u>resultado</u> de un dictamen y no sus fundamentos**. Ciertamente, para que pudiésemos emitir un dictamen que tuviera el efecto innegable de confirmar la determinación de nulidad que emitió el Tribunal de Apelaciones, no era necesario expresarnos sobre los méritos del presunto incumplimiento del Reglamento Conjunto 2020 con las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq*. A pesar de las expresiones de una Mayoría, esta conclusión, precisamente, es lo que dispone la Parte IV de la Opinión mayoritaria. Consonó con lo anterior, me veo precisado a concurrir en este dictamen."

La Jueza Asociada señora Pabón Charneco no intervino.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo