EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Jonathan Muñoz Barrientos<br><br>Peticionario<br><br>v.<br><br>Estado Libre Asociado de<br>Puerto Rico y otros<br><br>Recurrida | Certiorari<br><br>2023 TSPR 105<br><br>212 DPR ___ |

Número del Caso: CC-2022-0476

Fecha: 1ro de septiembre de 2023

Tribunal de Apelaciones:

>   Panel I

Abogada de la parte peticionaria:

>   Lcda. Patricia A. Castaing Lespier

Oficina del Procurador General:

>   Lcda. Mabel Sotomayor Hernandez
>   Subprocuradora General
>
>   Lcdo. Omar Andino Figueroa
>   Subprocurador General
>
>   Lcdo. Pedro J. García Flores
>   Procurador General Auxiliar

Materia: Derecho Administrativo - Jurisdicción del Tribunal de Primera Instancia sobre una reclamación extracontractual instada por un miembro de la población correccional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jonathan Muñoz Barrientos

    Peticionario

       v.                      CC-2022-0476     *Certiorari*

Estado Libre Asociado de
Puerto Rico y otros

    Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 1 de septiembre de 2023.

En el presente caso nos corresponde determinar si los foros *a quo* erraron al desestimar cierta demanda en daños y perjuicios instada por un miembro de la población correccional. Ello, al concluir que -- previo a tocar las puertas del foro judicial -- éste debía agotar determinados remedios administrativos ante el Departamento de Corrección y Rehabilitación.

Adelantamos que, luego de un ponderado y cuidadoso análisis del expediente ante nuestra consideración, así como de las disposiciones legales y jurisprudenciales aplicables, y toda vez que el Departamento de Corrección y Rehabilitación no está facultado en ley para conceder indemnización por los

daños y perjuicios sufridos por un miembro de la población correccional, hemos llegado a la conclusión que éste puede acudir directamente al foro judicial con su reclamación extracontractual. Veamos.

I.

Allá para el 20 de diciembre de 2019, el Sr. Jonathan Muñoz Barrientos (en adelante, "señor Muñoz Barrientos") instó, por derecho propio, ante el Tribunal de Primera Instancia, una demanda en daños y perjuicios en contra del Estado Libre Asociado de Puerto Rico (en adelante, "ELA") y varios oficiales correccionales. A grandes rasgos, el señor Muñoz Barrientos solicitó indemnización por los alegados daños emocionales sufridos como consecuencia de los presuntos actos de agresión cometidos, en su contra, por ciertos oficiales correccionales mientras se encontraba confinado en la Institución de Máxima Seguridad de Guayama 296.

En específico, el señor Muñoz Barrientos adujo que el 25 de enero de 2019, mientras disfrutaba de su tiempo de recreación en la cancha de la aludida institución correccional, se percató que en la verja que rodeaba la mencionada cancha había un agujero, el cual decidió atravesar. No obstante, indicó que, -- tras reflexionar sobre las consecuencias de su proceder --, voluntariamente regresó a la cancha, donde fue interceptado por varios oficiales correccionales quienes, presuntamente, lo golpearon, le echaron gas lacrimógeno y lo agredieron injustificadamente.

En virtud de ello, solicitó la cantidad de $40,000.00, como indemnización por los presuntos daños emocionales sufridos.

Enterado de lo anterior, el 23 de junio de 2019 el ELA presentó ante el foro primario una *Moción solicitando la desestimación*. En su escrito, el Estado argumentó que era el Departamento de Corrección y Rehabilitación quien ostentaba jurisdicción primaria exclusiva sobre los asuntos de seguridad y calidad de vida de los miembros de la población correccional; incluidos aquellos incidentes que afectaran la integridad física de las personas confinadas. En consecuencia, arguyó que procedía desestimar la demanda instada por el señor Muñoz Barrientos, pues éste no había agotado los remedios administrativos disponibles ante la mencionada agencia, ello, previo a acudir al foro judicial. En la alternativa, adujo que procedía la desestimación de la demanda debido a que ésta dejaba de exponer una reclamación que justificara la concesión de un remedio.

En respuesta al referido escrito presentado por el ELA, el señor Muñoz Barrientos presentó ante el Tribunal de Primera Instancia una *Moción en oposición a solicitud de desestimación*. En suma, esgrimió que, contrario a lo señalado por el Estado, era el foro judicial, -- y no el administrativo --, el lugar adecuado para dilucidar su causa de acción, lo anterior debido a que el Departamento de Corrección y Rehabilitación no estaba facultado en ley para conceder

indemnización por los daños y perjuicios sufridos por los miembros de la población correccional.[1]

Así pues, evaluados los escritos de ambas partes, el 16 de febrero de 2022 el foro primario emitió una *Sentencia* mediante la cual desestimó sin perjuicio la demanda instada por el señor Muñoz Barrientos. A juicio del Tribunal de Primera Instancia, el Departamento de Corrección y Rehabilitación ostentaba jurisdicción primaria para adjudicar las quejas presentadas por los miembros de la población correccional por los actos o incidentes que afectaran su bienestar físico.

En virtud de ello, el foro primario concluyó que, debido a que la controversia de autos versaba sobre una presunta agresión física por parte de ciertos oficiales correccionales en contra de un confinado, correspondía que el señor Muñoz Barrientos agotara los remedios administrativos disponibles previo a acudir al Tribunal de Primera Instancia. Precisa señalar que, si bien el foro primario reconoció que la Asamblea Legislativa no le delegó al Departamento de Corrección y Rehabilitación la facultad de conceder indemnización por los daños y perjuicios sufridos por una persona confinada, y que era el foro judicial el adecuado

---

[1] El señor Muñoz Barrientos precisó que la mencionada agencia administrativa carecía de jurisdicción primaria exclusiva para atender una reclamación instada por un confinado al amparo del Art. 1802 del Código Civil de 1930, 31 LPRA ant. sec. 5141. A su modo de ver, la adjudicación de una causa de acción por daños y perjuicios era un asunto de estricto derecho que no requería la pericia o el ejercicio previo de la discreción administrativa. De esta forma, el señor Muñoz Barrientos solicitó al Tribunal de Primera Instancia que denegara el petitorio del ELA.

para conceder dicho remedio, se abstuvo de ejercer su jurisdicción hasta tanto finalizara el proceso administrativo correspondiente.

En desacuerdo con el proceder del Tribunal de Primera Instancia, el 23 de marzo de 2022 el señor Muñoz Barrientos acudió al Tribunal de Apelaciones mediante recurso de apelación. En esencia, adujo que el foro primario había errado al concluir que debía agotar los remedios administrativos ante el Departamento de Corrección y Rehabilitación y, al desestimar su causa de acción. De esta forma, el señor Muñoz Barrientos reiteró que la mencionada agencia administrativa no estaba facultada en ley para conceder indemnización por los daños y perjuicios sufridos como consecuencia de los actos culposos o negligentes de los oficiales correccionales.

Oportunamente, el ELA se opuso al recurso presentado por el señor Muñoz Barrientos. En particular, reiteró sus planteamientos anteriores a los efectos de que -- previo a la intervención del foro judicial -- las alegaciones de agresión física por las cuales el señor Muñoz Barrientos presentó una demanda en daños y perjuicios debían ser adjudicadas por el Departamento de Corrección y Rehabilitación quien poseía jurisdicción primaria exclusiva.

Tras analizar los planteamientos de ambas partes, el 21 de junio de 2022 el foro apelativo intermedio notificó una *Sentencia* mediante la cual -- por el Panel de Jueces de Apelaciones que atendió el asunto quedar igualmente dividido

-- confirmó el dictamen emitido por el Tribunal de Primera Instancia.[2] En síntesis, el Tribunal de Apelaciones concluyó que las alegaciones del señor Muñoz Barrientos debían ser adjudicadas, en primera instancia, por el Departamento de Corrección y Rehabilitación, quien, a su modo de ver, era la agencia con el conocimiento especializado sobre la seguridad y los procesos disciplinarios de las instituciones carcelarias.

Por tanto, el foro apelativo intermedio, aun cuando también reconoció que el Departamento de Corrección y Rehabilitación no tenía autoridad en ley para conceder daños, determinó que el señor Muñoz Barrientos debía agotar los remedios administrativos previo a presentar una acción judicial. Por su parte, el Juez Candelaria en sus expresiones disidentes, a las cuales se unió la Juez Méndez Miró, consignó lo siguiente:

> la remisión al curso administrativo de la presente causa es incorrecta, tanto desde la perspectiva del agotamiento de un trámite administrativo que nunca comenzó, como desde la doctrina de jurisdicción primaria, pues las alegaciones particulares de agresión y daños formuladas escapan el conocimiento particular de la agencia y desbordan su ámbito adjudicativo, por lo que entretener administrativamente su resolución resulta inocuo e inconsecuente, a la vez que aplaza la adjudicación que formalmente compete al Tribunal. Apéndice del *certiorari*, pág. 6.

Así las cosas, el 22 de julio de 2022 el señor Muñoz Barrientos compareció ante nos mediante recurso de

---

[2] Los Jueces Sánchez Ramos y Rodríguez Casillas estuvieron conformes con la *Sentencia*. Mientras que, el Juez Candelaria Rosa disintió con expresiones escritas y la Juez Méndez Miró disintió y se unió a las expresiones del Juez Candelaria Rosa.

*certiorari*. En esencia, el señor Muñoz Barrientos adujo que el Tribunal de Apelaciones erró al confirmar el dictamen del foro primario que desestimó su demanda sin perjuicio. En esa línea, reitera que el foro judicial es el adecuado para adjudicar su causa de acción ya que la ley habilitadora del Departamento de Corrección y Rehabilitación no reconoce la facultad del foro administrativo para otorgar una indemnización por los daños y perjuicios reclamados por una persona confinada. Además, alega que, en el presente caso es innecesario el conocimiento especializado de la agencia y, por tanto, es inaplicable la doctrina de jurisdicción primaria.

Por su parte, el 1 de marzo de 2023 el ELA compareció ante nos. En su escrito, el Estado insiste, una vez más, en que los foros *a quo* actuaron correctamente al desestimar la demanda del señor Muñoz Barrientos, pues, a su juicio, éste debió acudir en primera instancia al trámite administrativo disponible ante el Departamento de Corrección y Rehabilitación previo a recurrir al foro judicial. En consecuencia, solicita que confirmemos las determinaciones recurridas.

Trabada así la controversia y con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa aplicable a la misma.

## II.

Como es sabido, la Constitución del Estado Libre Asociado de Puerto Rico le concede a la Asamblea Legislativa

la "facultad para crear, consolidar o reorganizar departamentos ejecutivos y definir sus funciones". Art. III, Sec. 16, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 410. En virtud de ello, "la Asamblea Legislativa ha delegado a las agencias administrativas adscritas al Poder Ejecutivo una serie de facultades, ya sea a través de la ley orgánica o a través de leyes especiales". *FCPR v. ELA et al.*, 2023 TSPR 26, 211 DPR ___ (2023).

En esa dirección, en inumerables ocasiones hemos sentenciado que, en nuestro ordenamiento jurídico, el poder que posee determinada agencia administrativa para actuar está delimitado por el estatuto orgánico o la ley habilitadora. *Col. Médicos et als. v. Com. Seguros et al.*, 201 DPR 362, 372 (2018); *Amieiro González v. Pinnacle Real Estate*, 173 DPR 363, 371 (2008); *Comisionado de Seguros v. PRIA*, 168 DPR 659, 666 (2006). Véase, también, J.A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 4ta ed. rev., San Juan, Ed. SITUM, 2017, pág. 44. En particular, se ha dejado meridiamente claro que la ley habilitadora es el mecanismo legal que delega a las referidas agencias los poderes y las facultades necesarias para actuar en conformidad con el propósito legislativo. *Amieiro González v. Pinnacle Real Estate*, *supra*; *Caribe Comms., Inc. v. P.R.T.Co.*, 157 DPR 203, 211 (2002).

En ese sentido, históricamente, la Asamblea Legislativa ha delegado a las agencias administrativas dos poderes esenciales, a saber: el poder de reglamentar, al ejercer

funciones cuasi-legislativas y, el poder de adjudicar controversias, al ejercer funciones cuasi-judiciales dentro de la pericia de la agencia. *FCPR v. ELA et al.*, *supra*; *Caribe Comms., Inc. v. P.R.T.Co.*, *supra*. Véase, además, Echevarría Vargas, *op. cit.*, pág. 25. Respecto a este último, -- entiéndase, el poder de las agencias administrativas para adjudicar controversias --, hemos dispuesto que este es análogo al que ejercen los tribunales. *Caribe Comms., Inc. v. P.R.T.Co.*, *supra*; *Quiñones v. San Rafael Estates, S.E.*, 143 DPR 756, 764 (1997). Véase, además, Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Ed. Forum, Colombia, 2013, pág. 82.

Por ello, y en aras de hacer efectivo el proceso administrativo, la Asamblea Legislativa también ha delegado a las agencias administrativas facultades remediales propias de los tribunales. *Íd*. En específico, y al amparo de las facultades cuasi-judiciales, se le ha reconocido a éstas la potestad para "resolver controversias y […] para dictar todos aquellos remedios que resulten cónsonos y proporcionales con las alegadas desviaciones legales y reglamentarias". Echevarría Vargas, *op. cit.*, pág. 272.

**Así pues, hemos resuelto que es válida la delegación a las agencias administrativas de la facultad para otorgar compensación por los daños y perjuicios sufridos por determinada persona.** *Caribe Comms., Inc. v. P.R.T.Co.*, *supra*; *Acevedo v. Mun. de Aguadilla*, 153 DPR 788, 803 (2001); *Quiñones v. San Rafael Estates, S.E.*, *supra*, págs. 765-766.

En particular, hemos validado tal delegación en dos instancias: 1) cuando la ley habilitadora de la agencia le concede expresamente esa facultad, y 2) cuando, al no estar facultada para imponer daños, dicho poder se encuentra implícito en la amplia facultad de la agencia para conceder un remedio que adelante los intereses de su ley orgánica y la política pública que la inspiró.[3] *Caribe Comms., Inc. v. P.R.T.Co.*, *supra*, págs. 215-216; *Guzmán y otros v. E.L.A.*, 156 DPR 693, 715 (2002); *Quiñones v. San Rafael Estates, S.E.*, *supra*, págs. 765-766.

Siendo ello así, es de notar que no todas las agencias administrativas poseen autoridad para otorgar indemnización en daños y perjuicios. Echevarría Vargas, *op. cit.*, pág. 272. En consecuencia, cuando un foro administrativo no está facultado por ley para conceder compensación por los daños y perjuicios sufridos, este Tribunal ha sido claro en que la parte perjudicada puede acudir directamente al foro judicial con su acción civil extracontractual.[4] *Guzmán y otros v. E.L.A.*, *supra*, pág. 715; *Acevedo v. Mun. de Aguadilla*, *supra*,

---

[3] En esta última instancia, los tribunales estamos llamados a "indagar si la reclamación en daños y perjuicios tiene una relación directa y sustancial con el servicio que presta la agencia administrativa en particular". (Énfasis omitido). *Caribe Comms., Inc. v. P.R.T.Co.*, *supra*, pág. 215.

[4] "[E]n situaciones en las que el foro administrativo […] no está facultado por ley para conceder indemnización por los daños y perjuicios sufridos […]. En tales circunstancias, [la parte perjudicada] 'debe acudir directamente al foro judicial con su acción en reclamo de daños y perjuicios para que se entienda interrumpido el término prescriptivo'". *Igartúa de la Rosa v. A.D.T.*, *supra*, págs. 332-333, citando a *Cintrón v. E.L.A.*, 127 DPR 582, 595 (1990).

pág. 803; *Igartúa de la Rosa v. A.D.T.*, 147 DPR 318, 332 (1998).

Por lo tanto, si el reclamo que tiene una parte en determinado litigio es uno en daños y perjuicios, y la ley orgánica de la agencia no provee para el resarcimiento de estos, resultaría innecesario "agotar ciertos remedios que en realidad no coinciden con los que [la parte] realmente pretende obtener ante el foro judicial". *Guzmán y otros v. E.L.A.*, *supra*, pág. 715. Al respecto, debemos recordar que:

> [l]a presentación de una reclamación en daños en los tribunales no puede ser utilizado como un subterfugio para burlar la obligación de agotar los remedios administrativos o para restarle finalidad a una determinación administrativa cuando, inmersa en la reclamación judicial, subyacen controversias que requieren ser adjudicadas inicialmente por el foro administrativo. *Íd.*, citando a *Acevedo v. Mun. de Aguadilla*, *supra*, pág. 805.

En tales situaciones, "los tribunales deben abstenerse de adjudicar aquellas controversias incluidas en la reclamación judicial cuya adjudicación está reservada al foro administrativo, ya sea por tratarse de una materia de jurisdicción exclusiva de ese foro, o porque su resolución requiere una previa interpretación de la pericia administrativa, entre otras circunstancias". *Igartúa de la Rosa v. A.D.T.*, *supra*, pág. 333. **Ahora bien, es norma firmemente establecida que "la procedencia de una acción en daños, que la agencia no puede adjudicar ni conceder, no requiere de la intervención o pericia por parte de la agencia concernida".** (Énfasis suplido). *Guzmán y otros v. E.L.A.*,

*supra*, pág. 723. Véase, además, *Gallardo v. Clavell*, 131 DPR 275, 288 (1992). **Por lo cual, en esas instancias la parte puede originar su causa de acción en daños ante los foros judiciales sin previo trámite administrativo, pues la agencia carece de jurisdicción para entender en el asunto**. *Guzmán y otros v. E.L.A.*, *supra*, pág. 725.

A.

Recordemos que la jurisdicción es el poder o la autoridad que posee un tribunal o un organismo administrativo para considerar y decidir casos o controversias con efecto vinculante para las partes. *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385-386 (2020); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020). A tales efectos, hemos sentenciado que "en el ámbito administrativo, al igual que en el foro judicial, no existe discreción para asumir jurisdicción donde no la hay". (Énfasis omitido). *Raimundi v. Productora*, 162 DPR 215, 224 (2004). Véase, además, *Depto. Justicia et al. v. Jiménez et al.*, 199 DPR 293, 309 (2017); *Pérez López y otros v. CFSE*, 189 DPR 877, 883 (2013); *Maldonado v. Pichardo*, 104 DPR 778, 782 (1976).

Lo anterior se debe a que "[l]as agencias administrativas solamente pueden ejercer los poderes que su ley habilitadora expresamente les ha otorgado y lo que sean indispensables para llevar a cabo su encomienda primordial". *Col. Médicos et als. v. Com. Seguros et al.*, *supra*, pág. 372. Véase, además, *Torres Pagán et al. v. Mun. de Ponce*, 191 DPR

583, 604 (2014); *Pérez López y otros v. CFSE*, *supra*. **Por lo cual, para determinar si una agencia administrativa tiene jurisdicción para atender determinada controversia, hay que analizar los poderes otorgados expresamente por su ley habilitadora y aquellos que son indispensables para llevar a cabo las facultades y funciones que le han sido conferidas.** *Depto. Justicia et al. v. Jiménez et al.*, *supra*; *Pérez López y otros v. CFSE*, *supra*, pág. 883.

Ello, se hace pues una agencia administrativa solo puede determinar "los derechos privados y las obligaciones de aquellos que están sujetos a su ámbito jurisdiccional". Fernández Quiñones, *op. cit.*, pág. 35. De ahí que una agencia administrativa no pueda asumir jurisdicción sobre ninguna clase de actividad para la que no esté claramente autorizada por ley. *Col. Médicos et als. v. Com. Seguros et al.*, *supra*; *Depto. Justicia et al. v. Jiménez et al.*, *supra*; *Torres Pagán et al. v. Mun. de Ponce*, *supra*, pág. 604.

Es decir, "ni la necesidad, ni la utilidad, ni la conveniencia pueden sustituir el estatuto en cuanto a fuente de poder de una agencia administrativa". (Énfasis omitido). *Pérez López y otros v. CFSE*, *supra*, págs. 883-884, citando a *Raimundi v. Productora*, *supra*, pág. 225. En esa dirección, hemos dispuesto que cualquier duda en cuanto a la existencia de ese poder debe resolverse en contra de su ejercicio. *Torres Pagán et al. v. Mun. de Ponce*, *supra*, pág. 604; *Amieiro González v. Pinnacle Real Estate*, *supra*; *Raimundi v. Productora*, *supra*.

La controversia que nos ocupa requiere, precisamente, que analicemos si la Asamblea Legislativa de Puerto Rico le delegó, expresa o implícitamente, al Departamento de Corrección y Rehabilitación la facultad de conceder indemnización en daños y perjuicios. Lo anterior tiene el fin de determinar si el Tribunal de Primera Instancia carecía o no de jurisdicción para dirimir cierta demanda en daños y perjuicios instada por un miembro de la población correccional, en este caso el señor Muñoz Barrientos. Para ello, es preciso repasar algunas disposiciones de la ley habilitadora de la mencionada agencia. Procedemos a así hacerlo.

III.

De entrada, y como cuestión de umbral, debemos recordar que la Asamblea Legislativa -- al amparo de la *Ley de Reorganización y Modernización de la Rama Ejecutiva del Gobierno de Puerto Rico de 2009*, Ley Núm. 182-2009, 3 LPRA ant. sec. 8821 *et seq.* --, aprobó el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011* (en adelante, "Plan de Reorganización de 2011"), Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, 3 LPRA, Ap. XVIII, Art. 1. Ello, en aras de establecer como política pública del Estado Libre Asociado de Puerto Rico:

> la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación

moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad. Art. 2 del Plan de Reorganización Núm. 2, *supra*.

Así las cosas, la precitada disposición legal creó el Departamento de Corrección y Rehabilitación como el organismo "responsable de implantar la política pública relacionada con el sistema correccional y de rehabilitación de adultos y menores, así como de la custodia de todos los ofensores y transgresores del sistema de justicia criminal del país". Art. 4 del Plan de Reorganización Núm. 2, *supra*. A esos fines, -- y, particularmente, con el propósito de hacer efectivo el funcionamiento del Departamento de Corrección y Rehabilitación --, el Plan de Reorganización de 2011, *supra*, le confirió al Secretario de la referida agencia administrativa la autoridad de establecer la organización interna de ésta y de aprobar, enmendar y derogar sus reglamentos. Art. 5(aa) del Plan de Reorganización Núm. 2, *supra*.

En virtud de la mencionada disposición legal, el Departamento de Rehabilitación y Corrección aprobó el *Reglamento para atender las solicitudes de remedios administrativos radicadas por los miembros de la población correccional*, Reglamento Núm. 8583 de 4 de mayo de 2015 (en adelante, "Reglamento Núm. 8583"). Lo anterior, tuvo el propósito de que

> toda persona recluida en una institución correccional [tuviera a su disposición] un organismo administrativo, en primera instancia, ante el cual [pudiera] presentar una solicitud de remedio, para

su atención, con el fin de minimizar las diferencias entre los miembros de la población correccional y el personal, y para evitar o reducir la radicación de pleitos en los Tribunales de Justicia. Introducción del Reglamento Núm. 8583, *supra*. Véase, además, *Pérez López v. Depto. Corrección*, 208 DPR 656, 670 (2022).

De esta forma, el mencionado cuerpo reglamentario dispuso para que todo miembro de la población correccional que presuntamente sufra un agravio inicie un procedimiento administrativo ante la División de Remedios Administrativos. Regla VI del Reglamento Núm. 8583, *supra*. En específico, la Regla VI del Reglamento Núm. 8583, *supra*, establece que la División de Remedios Administrativos tendrá jurisdicción para atender toda solicitud de remedio presentada por una persona confinada que esté relacionada, directa o indirectamente, con:

> a.   Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad o en su plan institucional.
>
> b.   Cualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento.
>
> c.   Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme a la reglamentación vigente sobre la "Suspensión de Privilegios por Razones de Seguridad".
>
> d.   Alegaciones de violencia sexual por parte de un miembro de la población correccional conforme "Prision Rape Elimination ACT" (PREA) (115.51ª, d, 115.52-b1, b2, b3). Regla VI del Reglamento Núm. 8583, *supra*. Véase, además, *Pérez López v. Depto. Corrección*, supra, pág. 671.

De lo anterior se desprende, pues, que una persona confinada podrá iniciar un procedimiento adjudicativo

informal, ante la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación, sobre asuntos relacionados a su bienestar, a su seguridad o a su plan institucional, entre otros. *Íd*. **No obstante, de las mencionadas disposiciones legales no se desprende que -- como remedio --, ni expresa ni implícitamente, la Asamblea Legislativa le haya delegado al Departamento de Corrección y Rehabilitación la facultad de atender y conceder indemnización por los daños y perjuicios reclamados por los miembros de la población correccional.**

Es, precisamente, a la luz de la normativa antes expuesta que procedemos a disponer de las controversias ante nos.

IV.

Como mencionamos anteriormente, en el presente caso, el señor Muñoz Barrientos aduce que los foros *a quo* erraron al desestimar su causa de acción en daños y perjuicios al concluir que, previo a acudir al foro judicial, debía agotar los procedimientos disponibles ante el Departamento de Corrección y Rehabilitación. Le asiste la razón.

Y es que, a la luz de la normativa antes expuesta, ha quedado claramente demostrado que el Plan de Reorganización de 2011, *supra*, no facultó al Departamento de Corrección y Rehabilitación, ni expresa ni implícitamente, para conceder indemnización por los daños y perjuicios sufridos por los miembros de la población correccional. De lo anterior, no albergamos duda alguna.

En virtud de ello, y toda vez que el señor Muñoz Barrientos solicitó en su demanda ser indemnizado por los alegados daños emocionales que sufrió como consecuencia de los presuntos actos de agresión cometidos por ciertos oficiales correccionales en su contra, éste podía, como correctamente lo hizo, acudir directamente al foro judicial con su reclamación extracontractual. Es el Tribunal de Primera Instancia el foro adecuado para atender su reclamo.

Se cometió, pues, el error señalado. Procede que revoquemos el dictamen emitido por el foro apelativo intermedio.

V.

Por los fundamentos antes expuestos, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones, así como el dictamen emitido por el Tribunal de Primera Instancia. En consecuencia, se devuelve el caso al foro primario para que proceda conforme a lo aquí dispuesto.

Se dictará *Sentencia* de conformidad.

Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jonathan Muñoz Barrientos

    Peticionario

       v.                  CC-2022-0476     *Certiorari*

Estado Libre Asociado de
Puerto Rico y otros

    Recurrida

SENTENCIA

En San Juan, Puerto Rico a 1 de septiembre de 2023.

      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones, así como el dictamen emitido por el Tribunal de Primera Instancia. En consecuencia, se devuelve el caso al foro primario para que proceda conforme a lo aquí dispuesto.

      Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió Opinión Disidente a la cual se une el Juez Asociado señor Rivera García. La Jueza Presidenta Oronoz Rodríguez no interviene.

                    Javier O. Sepúlveda Rodríguez
                  Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Jonathan Muñoz Barrientos | | *Certiorari* |
| Peticionario | | |
| v. | CC-2022-0476 | |
| Estado Libre Asociado de Puerto Rico y otros | | |
| Recurrido | | |

La Jueza Asociada señora Pabón Charneco emitió Opinión Disidente a la cual se une el Juez Asociado señor Rivera García.

En San Juan, Puerto Rico a 1 de septiembre de 2023.

La controversia ante nos se limita a dilucidar en qué momento debe acudir a los tribunales un confinado que tenga un reclamo de daños y perjuicios contra la institución carcelaria donde está recluido, por hechos ocurridos durante su confinamiento. Considero que la Mayoría de este Tribunal erró al concluir que el peticionario podía acudir directamente al foro judicial con su reclamación de daños. Entiéndase, soy del criterio que el Sr. Jonathan Muñoz Barrientos (señor Muñoz Barrientos) debió cumplir en primera instancia con el proceso administrativo dispuesto en el *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional*, *infra*. Esto hubiese permitido a la agencia realizar la investigación y evaluación correspondiente del

asunto. Aunque esta última no pudiera conceder los daños emocionales reclamados, posteriormente, el foro judicial podría adjudicarlos por estar facultado para conceder el remedio solicitado y con el beneficio de un expediente completo. Por esta razón y los fundamentos que expondré a continuación, **disiento**.

## I

El señor Muñoz Barrientos presentó la Demanda de autos el 20 de diciembre de 2019. Alegó que el 25 de enero de 2019 sufrió una serie de agresiones por parte de unos oficiales correccionales en la Institución Correccional de Guayama. En particular, alegó que, mientras disfrutaba de un tiempo de recreación en una cancha, vio que en la verja había un agujero. Atravesó el agujero hacia el área del techo, pero decidió regresar al percatarse que estaba sangrando por una pierna y al no querer que por este error se le sumara a su pena. Asimismo, alegó que cuando regresó a la cancha un oficial correccional le ordenó tirarse al suelo y, una vez en el suelo, el oficial lo agredió "salvajemente". Sostuvo, además, que luego llegaron otros dos oficiales correccionales, quienes también lo agredieron injustificadamente y le lanzaron gas lacrimógeno. Por estos hechos, solicitó una indemnización de $40,000 por concepto de daños emocionales.

Por su parte, el Estado solicitó la desestimación de la Demanda por entender que el peticionario debió acudir en primera instancia al procedimiento administrativo que provee

el Departamento de Corrección y Rehabilitación (DCR) para ventilar asuntos que afecten la seguridad y calidad de vida de los confinados, los cuales incluyen incidentes que afecten la integridad física de estos. Al no haberse agotado los remedios administrativos aplicables, indicó que procedía la desestimación de la Demanda.

Presentados los argumentos de las partes, el Tribunal de Primera Instancia desestimó la Demanda **sin perjuicio**. El foro primario explicó que, previo a acudir a los tribunales, el señor Muñoz Barrientos debió presentar una Queja administrativa ante el DCR, ya que la agencia tenía jurisdicción primaria para adjudicar las Quejas que presenten los confinados por incidentes que afecten su bienestar físico.

Inconforme, el peticionario acudió al Tribunal de Apelaciones. El foro apelativo intermedio confirmó el dictamen del foro primario. Destacó que aunque el DCR no tiene autoridad para conceder indemnización por daños, posee un conocimiento especializado sobre los procesos de seguridad y disciplinarios en sus instituciones. Asimismo, afirmó que la agencia cuenta con un esquema administrativo para la presentación de Quejas por los confinados sobre situaciones que inciden en la seguridad y calidad de vida de la población correccional durante su confinamiento. Por lo tanto, concluyó que es ante ese foro que el peticionario debió presentar su reclamación en primera instancia.

Por otro lado, el Tribunal de Apelaciones expresó que aun si la agencia desestimara una solicitud de remedio por tardía, el peticionario podría presentar nuevamente la acción de daños en el foro primario, tras agotar los trámites administrativos. Por lo que, si bien el Tribunal de Primera Instancia pudo paralizar la causa ante sí, no erró al desestimar la Demanda sin perjuicio ya que el peticionario tendría la oportunidad de volverla a presentar.

Insatisfecho con la determinación del foro apelativo intermedio, el señor Muñoz Barrientos acudió ante nos.

## II

### A.

El *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional* (Reglamento de Remedios Administrativos), Reglamento Núm. 8583 de 4 de mayo de 2015, se creó al amparo del 42 USC 1997 *et seq.,* ley federal conocida en inglés como el *Civil Rights of Institutionalized Person Act (CRIPA).*[1] El propósito de esta ley federal es canalizar efectivamente los reclamos de la población correccional para que "disponga de un organismo administrativo, en primera instancia, ante el cual pueda presentar una solicitud de remedio". *Pérez López v. Departamento de Corrección,* 208 DPR 656, 670 (2022). Ello,

---

[1] Específicamente, la 42 USC 1997 *et seq.* se hizo extensiva a Puerto Rico mediante lo dispuesto en su Sec. 2(4). Asimismo, el Reglamento Núm. 8583 de 4 de mayo de 2015 se aprobó en virtud de la autoridad que el Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, 3 LPRA AP. XVIII, le confiere al Administrador de Corrección para crear un mecanismo adecuado similar al del estatuto federal mencionado.

para "minimizar las diferencias entre los miembros de la población correccional y el personal y **para evitar o reducir la radicación de pleitos en los Tribunales de Justicia**". Íd. (Negrilla suplida).

## B.

En cuanto a la ley federal *CRIPA, supra,* en *Booth v. Churner,* 532 US 731 (2001), el Tribunal Supremo de los Estados Unidos debía determinar si la Sección 7(a) del estatuto*,* según enmendada por el *Prison Litigation Reform Act of 1995* (PLRA), 42 USC sec. 1997e(a), requiere que los miembros de la población correccional agoten los remedios administrativos disponibles en su institución penal antes de presentar una causa de acción en los tribunales sobre las condiciones de su confinamiento al amparo de legislación federal. En el caso, el peticionario, un confinado en una institución penal en Pennsylvania, presentó una acción en contra de unos oficiales correccionales por violación de derechos civiles, al amparo de la Sección 1983 de la Ley de Derechos Civiles federal, 42 USC sec. 1983. Indicó que fue agredido por los oficiales correccionales y que se le negó atención médica para tratar las heridas que sustrajo. Entre los remedios que solicitó, se encontraba una indemnización monetaria por los daños sufridos.

El referido caso trataba de unos contornos muy similares a los de autos. De manera ilustrativa, destacamos que el Departamento de Corrección de Pennsylvania contaba con un proceso administrativo que requería que los miembros

de la población correccional presentaran una Queja escrita dentro de los quince (15) días desde que ocurrieron los hechos que ameritaran una reclamación. *Booth v. Churner, supra,* pág. 734. La Queja era entonces referida a un oficial administrativo para su investigación y resolución. Íd. De resultar insatisfecho con la determinación inicial, el confinado tenía dos oportunidades de revisión administrativa. Íd. Aunque el esquema administrativo antes descrito fue diseñado para atender alegaciones sobre abuso y uso de fuerza excesiva por oficiales correccionales, no disponía para la indemnización pecuniaria. Íd.

Como cuestión de trasfondo, tras la creación del PLRA, la Sec. 1997e(a) de CRIPA disponía que ningún confinado podía presentar una acción relacionada a las condiciones de su presidio al amparo de legislación federal, hasta tanto agotara los remedios administrativos que tuviera disponible. Íd., pág. 736. Previamente, la Ley les concedía discreción a los tribunales para requerir que los confinados agotaran los remedios administrativos disponibles únicamente si estos eran rápidos, sencillos y efectivos. Luego de analizar los estatutos para determinar la intención congresional en cuanto al significado de agotar los "*administrative remedies available*", el Tribunal Supremo federal determinó que en este escenario el agotamiento de los remedios administrativos tenía un significado procesal y no se refería a lo que pudiese conceder el organismo administrativo. Es decir, el remedio disponible se refiere

al procedimiento administrativo aplicable, no al remedio que ese foro finalmente pueda conceder. El Tribunal Supremo, específicamente, razonó que:

> While the modifier "available" requires the possibility of some relief for the action complained of (as the parties agree), the word "exhausted" has a decidedly procedural emphasis. **It makes sense only in referring to the procedural means, not the particular relief ordered.** It would, for example, be very strange usage to say that a prisoner must "exhaust" an administrative order reassigning an abusive guard before a prisoner could go to court and ask for something else; or to say (in States that award money damages administratively) that a prisoner must "exhaust" his damages award before going to court for more. How would he "exhaust" a transfer of personnel? Would he have to spend the money to "exhaust" the monetary relief given him? It makes no sense to demand that someone exhaust "such administrative [redress]" as is available; one "exhausts" processes, not forms of relief, and the statute provides that one must. Íd., págs. 738-739. (Negrilla suplida).

De esta manera, concluyó que cuando el Congreso eliminó la discreción que tenían los tribunales de requerir que los confinados agotaran los remedios administrativos disponibles únicamente si estos eran rápidos, sencillos y efectivos, tuvo el propósito de imponer un requisito de agotamiento más amplio. Íd., pág. 740. Es decir, esta acción congresional buscaba que los miembros de la población correccional no intentaran obviar procesos administrativos al limitar sus reclamaciones a una solicitud de daños que el esquema administrativo no podía conceder. Íd., pág. 40. Por ello, coligió que el Congreso ordenó el agotamiento de procesos administrativos "*regardless of the relief offered through administrative procedures*". Íd.

Por lo tanto, resolvió que la intención legislativa clara detrás de las enmiendas era que el mandato congresional de las enmiendas que la PLRA introdujo a la CRIPA **requiere que los confinados que soliciten resarcimiento monetario al amparo de la legislación federal deben completar el procedimiento administrativo a su disposición, aun cuando el organismo administrativo no esté facultado para conceder el remedio monetario que se reclama.** Íd., pág. 733.[2] Ello, previo a acudir a los tribunales con una causa de acción reclamando ese remedio. En apoyo de su conclusión, entre otros factores, el máximo foro federal razonó que el cumplimiento con el proceso administrativo podría filtrar algunas reclamaciones frívolas, al igual que propulsar litigios más completos una vez llegaran al foro judicial. Íd., pág. 737 ("[T]he administrative process itself would filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding").

### III

Notamos que la situación que suscitó la controversia de autos surgió por un intento de **fuga** de la institución carcelaria por parte del peticionario. Es dentro de ese contexto que los oficiales correccionales cometieron las presuntas agresiones físicas que aduce el peticionario. Este último alega que su reclamo debe ventilarse ante los

---

[2] Véase, además, *Porter v. Nussle,* 534 US 516, págs. 534-525 (2002) y *Colón Rivera et al. v. ELA,* 189 DPR 1033 (2013), nota al calce 58.

tribunales y que los foros *a quo* erraron al desestimar su Demanda en daños y perjuicios por entender que debía agotar los procesos administrativos disponibles ante el DCR. Insiste que el agotamiento de remedios administrativos es incompatible con su reclamo ya que el DCR no posee la facultad de conceder un remedio de daños. Considero que no le asiste la razón, veamos.

La Asamblea Legislativa le concedió amplia facultad al DCR para atender cualquier reclamación que presente un miembro de la población correccional de una situación que afecte su calidad de vida y seguridad en su confinamiento. En ese sentido, se estableció la División de Remedios Administrativos, entidad facultada para atender las reclamaciones de los confinados sobre actos o incidentes que afecten el bienestar físico o mental de los miembros de la población correccional.

Sin duda, la presunta agresión física a la que estuvo sujeto el peticionario claramente cae dentro de los casos que la División de Remedios Administrativos del DCR está facultada para atender. Indiscutiblemente, la agencia es quien mejor puede determinar si los oficiales correccionales observaron el protocolo aplicable a un intento de fuga para garantizar la seguridad de la institución o si cometieron las agresiones imputadas. Por lo tanto, es forzoso concluir que la agencia administrativa cuenta con jurisdicción primaria exclusiva sobre la reclamación del señor Muñoz Barrientos.

Ahora bien, reconozco que dentro del esquema legal actual, el DCR no tiene la facultad de conceder un remedio en daños y perjuicios, que es precisamente el remedio que solicita el peticionario y por lo que este alega que los foros inferiores debieron atender su reclamo. Igualmente, el Tribunal en el pasado ha expresado que es innecesario agotar remedios administrativos y se puede acudir directamente al foro judicial cuando la agencia concerniente no está facultada para conceder daños. Sin embargo, considero que las circunstancias de esos casos son distinguibles con respecto al de autos que requiere que la presente controversia no se resuelva basado en ese precedente.

Particularmente, *Guzmán v. ELA,* 156 DPR 693 (2002), se dio en el contexto de unos empleados gubernamentales que presentaron una Demanda sobre daños y perjuicios por los daños que presuntamente les habían ocasionado los oficiales de la dependencia gubernamental donde laboraban. En lo pertinente, el Tribunal discutió la Ley Núm. 16 de 5 de agosto de 1975, según enmendada, conocida como *Ley de Seguridad y Salud en el* Trabajo, 29 LPRA sec. 361 *et seq.* y la *Occupational Safety and Health Act of 1970*, 29 USC sec. 651 *et seq.* (OSHA). El Tribunal determinó que ninguna de las mencionadas legislaciones regulaba ni reemplazaba la búsqueda de remedios mediante la presentación de una reclamación extracontractual. *Guzmán v. ELA, supra,* pág. 726. Claramente no estamos ante una relación obrero-patronal

ni alguna otra que requiere la aplicación de la legislación especial antes descrita.

Debido a la naturaleza de las alegaciones del señor Muñoz Barrientos, a mi modo de ver resulta apropiado que su reclamo sea dilucidado por la agencia administrativa en primera instancia, ya que es el cuerpo con el claro mandato legislativo y el esquema regulatorio para ello. Además, cuenta con la pericia en cuanto a la interpretación de sus reglamentos y la regulación de la conducta de sus empleados. De tal manera, la agencia es quien mejor puede atender el reclamo del peticionario.

Ya el Tribunal Supremo de Estados Unidos ha determinado que la legislación federal a cuyo amparo se creó el Reglamento y el procedimiento administrativo que nos ocupa, requiere que los miembros de la población correccional **completen el procedimiento administrativo que tengan disponible previo a acudir a los tribunales** en situaciones como la de autos. Entiéndase, cuando interesen presentar una reclamación por un incidente relacionado a su bienestar físico o mental en su confinamiento, **deben acudir a la agencia administrativa correspondiente aun cuando esta no esté facultada para otorgar daños.**

A tales fines, hubiese resuelto la controversia ante nos a la luz de *Booth v. Churner, supra,* incorporando esa interpretación jurisprudencial a nuestro ordenamiento jurídico, a pesar de que la causa de acción de autos se presentó al amparo del Art. 1802 del Código Civil de Puerto

Rico de 1930, 31 LPRA ant. sec. 5141.[3] Por ello, debimos interpretar que el lenguaje de sus reglamentos y normas era extensivo a tener jurisdicción primaria sobre todo asunto que pudiera levantar una persona confinada en cuanto a una situación que afecte su bienestar físico o mental en su confinamiento.

Este Tribunal ha expresado previamente que esta legislación federal antes discutida aplica únicamente al presentarse una causa de acción para vindicar derechos civiles. *Colón Rivera v. ELA,* 189 DPR 1033, nota al calce 58. Sin embargo, la ley federal a base de la cual se adoptaron las normas que gobiernan el tema en nuestra jurisdicción se ha desarrollado de manera que las agencias que administran instituciones correccionales diriman **cualquier reclamación** que presente un confinado con relación a determinadas situaciones que ocurran mientras esté recluido en una institución penal. El Tribunal Supremo fue diáfano al indicar que se debe agotar el procedimiento administrativo, aunque este no culmine con el otorgamiento del remedio que el confinado solicitó. Por ello, considero que el curso de acción más apropiado para situaciones como la de autos es que la persona confinada inicialmente presente una queja ante la División de Remedios Administrativos del DCR.

---

[3] Derogado 2020. Equivalente al Art. 1536 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10801.

Así, el DCR podría iniciar la investigación correspondiente y llegar a una determinación sobre las alegaciones ante su consideración. Una vez completado el trámite administrativo, entonces correspondería que la causa pasara al Tribunal de Primera Instancia para examine la reclamación de daños.[4] *A contrario sensu*, si se acudiese al foro judicial directamente, procedería una desestimación sin perjuicio hasta que se cumpla con el trámite administrativo discutido.

El Tribunal de Primera Instancia pudo haber paralizado los procedimientos ante sí para que el peticionario acudiera al foro administrativo. De esta manera, el Tribunal retendría su jurisdicción sobre la reclamación de daños hasta la culminación del procedimiento administrativo ante el DCR. De esta forma, se cumple y protege el mandato legislativo de que el DCR evalúe los reclamos de la población correccional en cuanto a situaciones dentro de sus instituciones y se permite que la agencia emplee su conocimiento especializado sobre sus leyes, reglamentos y funcionamiento interno. Esto a su vez sirve para que el foro judicial cuente con un expediente robusto y un procedimiento en una etapa más avanzada que facilite la revisión y adjudicación final del procedimiento administrativo.

---

[4] Nótese que debido a que la Queja sería una reclamación extrajudicial, esta interrumpiría el término prescriptivo para acudir a los tribunales en la etapa correspondiente. Art. 1873 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5303. Equivalente al Art. 1197 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9489.

Por otro lado, evitamos que la presentación de una acción de daños en los tribunales se utilice para burlar la obligación de remedios administrativos o restarle finalidad a una determinación administrativa cuando subyacen controversias que requieren que el foro administrativo las adjudique inicialmente. *Igartúa de la Rosa v. ADT,* 147 DPR 318, 333 (1998). Nótese que de esta manera no estaríamos obstaculizando el acceso a los tribunales de las personas confinadas, sino canalizando el ejercicio de la jurisdicción de ambos foros, el administrativo y judicial, para propiciar la solución más eficiente de este tipo de reclamo.

Por estos fundamentos **disiento** del proceder de una mayoría de este Tribunal, que entendió que el Tribunal de Primera Instancia es el foro adecuado para atender, desde su inicio, el reclamo de daños y perjuicios del peticionario.

Mildred G. Pabón Charneco
Jueza Asociada